## STREAM POLLUTED BY PUMPINGS FROM A COAL MINE.

Court of Appeals for Perry County.

THE STANDARD HOCKING COAL COMPANY v. MARY A. KOONTZ.

Decided, November 19, 1915.

*Measure of Damages—In Action for Pollution of Stream Running Through a Farm—Actual Damages Only Can be Recovered.*

Where water pumped from a coal mine and discharged into a running stream is so impregnated with sulphuric acid as to pollute the stream and a neighboring well to such an extent that live stock will no longer drink therefrom and the water from the well is rendered unfit for domestic purposes, the damage sustained by the riparian owner is measured by the permanent injury to his land as shown by its diminished rental value or the cost of installing another sufficient water supply.

*T. M. Potter* and *George A. Fairbanks,* for plaintiff in error.
*C. A. Donahue* and *T. B. Williams,* contra.

HOUCK, J.

This is a proceeding in error prosecuted from the common pleas court of this county, asking that the court below be reversed in a judgment rendered in favor of the defendant in error, the plaintiff below, against the plaintiff in error, who was the defendant below. The suit was for alleged damages to the farm of the plaintiff below.

The petition in substance avers that the plaintiff is the owner of a farm of one hundred and fifty-eight acres, located in Perry county, Ohio; that running through said premises is a natural stream of water and that prior to the grievances complained of, as hereinafter set forth, this stream had been used by her for the purpose of watering stock and that it was the only available stream for that purpose; that on said premises were dwelling-houses and a barn; that there was a valuable well of water which was used for domestic purposes; that the defendant owned and

operated a coal mine north of said plaintiff's premises and nearby said stream of water; that defendant made an opening into said mine through which water was pumped therefrom and found its way into said stream above referred to, and that said water so pumped into said stream was highly inpregnated with sulphuric acid, and that it polluted the water in said stream flowing through the land of plaintiff and it found its way into said well on the premises of plaintiff and rendered the water therein useless for domestic or any other purposes, and by reason thereof said farm had become less valuable and her rents and income therefrom had decreased; that she expended large sums of money in an effort to secure suitable water and by reason of the same has been damaged in the sum of $2,000, and for which sum she prays judgment.

The defendant filed an answer to the petition which was in the nature of a general denial. Upon the issue joined the cause was submitted to a jury and a verdict rendered for the sum of $280 in favor of the plaintiff. A motion for a new trial was filed, heard and overruled, and a judgment rendered on the verdict. The plaintiff in error seeks a reversal of this judgment and in its petition in error sets forth a number of grounds of alleged error, but its counsel in oral argument urge but two of them, namely: first, that the court erred in not giving to the jury requests Nos. 2 and 3, which were in writing, and were requested to be given by defendant below before argument; second, that the court erred in its general charge to the jury.

Taking up the first ground of alleged error, to-wit, that the court erred in its refusal to give requests Nos. 2 and 3 before argument, will say that we have examined these requests and while we are of the opinion that as abstract propositions of law they are sound and should be given in such a case, where the facts involved in the case warrant the application of such principles of law as are contained in said requests Nos. 2 and 3, but on an examination of the record and the evidence disclosed therein, we are of the opinion that the facts in the case at bar do not warrant the application of the principles of law as set forth in

said special requests Nos. 2 and 3, and that the court below did not err in refusing to give the special requests hereinbefore referred to.

Coming now to the second ground of alleged error, that the court erred in its general charge to the jury, will say that counsel for plaintiff in error complains and contends the court's charge to the jury with reference to the measure of damages was not the law applicable to the case at bar. That part of the charge to which special objection is made is as follows:

"Now, the claim here is that the stream was polluted; that the stream in a state of nature was uncontaminated, but by the discharge of sulphur water from this particular mine of defendant the stream was contaminated, and as it passed the place where it passed over her land it was rendered useless for the purpose of watering the herds and cattle she may have had and the well was totally destroyed for domestic purposes.

"That allegation the defendant denies and the burden of proof then is on the plaintiff. If you find that the well was polluted, that the well was in fact destroyed, and if you go further and find that it was done and contributed to either in whole or in part on the part of the defendant, you will go further and inquire what, if any, damage has been sustained upon the part of the plaintiff.

"Now, the plaintiff can only recover, if she recover at all, her actual damages, and she can only recover upon the claims specifically set forth and complained of in this petition. Now, she claims that the rental values of her premises were diminished and that the value of her farm for rental purposes was largely reduced. You have the evidence upon that proposition. This action was commenced on April 4th, 1914, and she sues for diminished rental value for the three years before the commencement of this action. In addition to that, gentlemen, the plaintiff is entitled to recover for any inconvenience and for any actual and necessary expenses incurred by her by reason of the pollution of this stream and the pollution of this well, as set out in the petition, by the defendant, if you in fact find that the defendant did so pollute the stream and well.

"Now, when I say she is entitled to actual and necessary expenses incurred by reason of the pollution of this stream and by reason of the well, that does not mean that she could extend beyond what was necessary to install water on the land."

We think it will be conceded as a fundamental and a well established principle of law that an owner of land has the right to enjoy the soil itself and the incidents thereto in its natural state unaffected by the tortious acts of a neighboring land owner, and where the land is located in such a way that a natural stream of water passes through it, the owner of the land, as a riparian owner, is entitled, as an incident to his estate, to the natural flow of the water of the stream in its accustomed channel, undiminished in quantity and unimpaired in quality.

We further think that it is a sound principle of law that in an action for damages to real property testimony is admissible to show the exact character of the injury suffered, whether of a permanent or irreparable nature, or of the sort susceptible of repair, so that the property may be restored to its original condition. If the testimony shows the former to be the nature of the injury, the measure of damages is the difference in value of the property before and after the injury. If an injury susceptible of repair has been done, the measure of damages is the reasonable cost of restoration plus the reasonable compensation for any loss of the use of the property between the times of injury and restoration, unless such cost of restoration exceeds the difference in values of the property before and after the injury, in which case the difference in values becomes the law.

The court is of the opinion that the principles of law hereinbefore referred to are well established in this state and we think we need refer to but one case, which is found in the 79th Ohio State, page 263, being the case of *Straight* v. *Hope*. The second syllabus reads as follows:

"An upper owner of lands upon such stream who operates them for underlying petroleum by pumping it and the salt water with which it is commingled into tanks, and after the petroleum rises withdrawing the salt water from beneath and discharging it by gravity into the stream, is liable in compensatory damages for such substantial injuries as may be sustained by a lower proprietor in consequence of the water in the stream being thereby rendered unfit for the use of the live stock and destruction of the grass with which it comes in contact, although such

is conducted with care and is the only known practicable mode of developing the mineral resources of his lands."

It is urged by the plaintiff in error that under no rule of damages was the plaintiff below entitled to recover for anything, save and except the diminution in the market value of the property. We do not agree with counsel for plaintiff in error in this claim. We think that the measure of damages in the present case includes the permanent injury to the land, the diminution in rental value and the cost of installing another supply of water. In other words, the recovery is limited to the actual damages incurred in the premises as shown by the evidence.

We have examined, with some care, the charge of the court, and we have no hesitancy in saying that we find it to be a clear and concise statement of law governing the facts pertaining to the issues in the case, and that it fully and completely covers all of the questions involved therein.

Viewing the case as we do, and finding the recovery to be the result of proof offered, tending to show the actual damages sustained by the plaintiff below, and finding no error in the record prejudicial to the rights of the plaintiff in error, there is but one thing for the court to do; and that is to affirm the judgment below, which we now do.

SHIELDS, J., and POWELL, J., concur.